UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BETH LORMAN, | : | Case No. 1:14-cv-701 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IS REVERSED; (2) JUDGMENT IS ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to supplemental security income ("SSI") and Disability Insurance Benefits ("DIB"). (*See* Administrative Transcript at Doc. 4 ("Tr") (Tr. 14-23) (ALJ's decision)).

**I.**

Plaintiff filed for SSI and DIB on November 10, 2011, alleging that she had become disabled on December 1, 2010. (Tr. 197-203, 204-09, 247-48). Plaintiff alleges disability due to depression, anxiety, personality disorder, asthma, fibromyalgia, hypertension, and low back pain. (Tr. 22). After a hearing, an ALJ issued a decision on June 7, 2013, denying Plaintiff's applications. (Tr. 16-23, 41-79). The Appeals Council denied Plaintiff's request for review on August 7, 2014. (Tr. 1-3). Plaintiff has

exhausted her administrative remedies, so this case is ripe for review pursuant to 42 U.S.C. Sections 405(g) and 1382(c)(3).

Plaintiff was 49 years old on the date of the hearing. (Tr. 16, 197, 204, 247). Plaintiff completed high school and has relevant work experience[1] as a cashier, workout attendant, dry cleaning clerk, and bag inspector. (Tr. 46, 68).[2]

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2. The claimant has not engaged in substantial gainful activity since December 1, 2010, the alleged onset date. (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: depression; anxiety; personality disorder; asthma; fibromyalgia; hypertension; and low back strain/pain syndrome. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolding; she can occasionally balance, stoop, kneel, crouch, and crawl; she must avoid all

---

[1] Past relevant work experience is defined as work that the claimant has "done within the last 15 years, [that] lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 416.965(a).

[2] Plaintiff was fired from her last job for repeatedly calling in sick. (Tr. 46)

> exposure to unprotected heights; she should avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, and gases; she is limited to performing simple, routine, repetitive tasks; she should avoid working with the public, but she can interact with the public up to approximately 15% of the workday, but no transactional interaction, such as sales or negotiations; she can have only occasional interaction with co-workers and supervisors; she is limited to no constant production rate pace work, but she can perform goal-oriented work; and she is limited to jobs where changes in the work setting occur no more than 10% of the workday.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 27, 1963 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2010, through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-34).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations, and was therefore not entitled to SSI or DIB. (Tr. 34).

3

On appeal, Plaintiff alleges that the ALJ erred because: (1) she disregarded the work limitations placed upon Plaintiff by therapist Perry McCool; (2) her rationale for disagreeing with the work limits described by the treating therapist are contradicted by her own factual findings; (3) her finding that Plaintiff was not credible is not supported by the record; and (4) she erroneously referenced Plaintiff's ability to do minor, life-sustaining activities as proof that she can do full-time work. The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

The record reflects that:

Plaintiff's treating mental health therapist, Perry McCool, placed significant work limits on her due to her emotional disorder. (Tr. 505-508). The vocational expert ("VE") agreed that those limitations precluded work. (Tr. 76-78). The VE also stated that Plaintiff would be unable to work if she missed more than one day of work per month. (Tr. 78).

Although the ALJ found that Plaintiff had some work limits, she disagreed with the restrictions described by Plaintiff's therapist. (Tr. 25-26). A VE testified on behalf of Social Security, stating that the ALJ's limits would not prevent her from performing her prior work. (Tr. 72). The VE also opined that there were other light and sedentary jobs that Plaintiff could do. (Tr. 71-74). Although the ALJ ultimately concluded that Plaintiff could not do her prior work, the ALJ concluded that there were a significant number of other jobs Plaintiff could do and denied disability benefits. (Tr. 33-34).

At the April 2013 hearing, Plaintiff testified that she had ongoing symptoms of severe depression and anxiety.  She stated that she sleeps 12 to 18 hours a day due to her depression (from 10:00 p.m. to 3:00 p.m. the next day).  (Tr. 53, 61).  Plaintiff was too anxious to drive to the Social Security hearing and, instead, had her disabled husband, who was on oxygen, bring her.  (Tr. 60-61).

Although she has a small dog, Plaintiff dreads taking it for walks as she experiences panic attacks outside of her apartment.  (Tr. 54).  When she does go out with the dog, Plaintiff wears a coat with the hood up so that no one recognizes her, and only walks a couple of houses from her own before turning around.  (Tr. 62, 54).  She shops about once a month, and in the evening when there are not as many people out.  (Tr. 62).  The best time of day for her is after midnight because it is dark and no one is out.  (*Id*.)

Plaintiff typically has just one meal a day or at the most two.  (Tr. 54).  The meals involve making simple sandwiches or heating up pre-prepared goods.  (Tr. 56).  She does the laundry once or twice a month in her apartment building.  (Tr. 55).  She drives short distances, such as to her weekly therapy session or to the grocery store where she spends approximately 20 minutes.  (Tr. 50).  Plaintiff can bring in the groceries.  (Tr. 52).  She watches the television sometimes during the day, but states that she is distracted by her worries.  (Tr. 55).  Sometimes Plaintiff does the dishes or occasionally takes a shower.  (Tr. 54).

Plaintiff is not close to her family and does not socialize.  (Tr. 56-57).  Her brother will not have anything to do with her because of her mental problems.  (Tr. 57).  She

talks to one sister once or twice a month and rarely with the other sister. (*Id*.) She does not have many friends and talks to a single neighbor once a week by telephone. (*Id.*)

Plaintiff reported that she has gotten more stressed out "as I've gotten older." (Tr. 57). She testified that she has hallucinations on a monthly basis where it sounds like somebody whispering, or that there is a shuffling sound like somebody is hiding in her bedroom closet. (Tr. 64). As a result, she no longer sleeps in the bedroom. (*Id*.) Additionally, she put a large box in front of the door to her apartment to keep potential intruders out. (*Id.*) Plaintiff also began carrying knives in her car and hiding them under her pillow at home. (*Id.*) Both her therapist and her husband have participated in removing the knives from her car and house. (Tr. 63). Her husband keeps her medication under lock and key as she has overdosed before. (Tr. 63-64). She feels somebody is going to come up behind her or grab her and kick in the door. (Tr. 63). She stated that she is suicidal, feels doomed, and testified that "I pray to die." (*Id*.)

Plaintiff stated that she was not able to work due to the panic attacks she experiences being around people, which made getting to work and staying at work difficult. (Tr. 57). Additionally, she was not catching on to the jobs. (*Id*.)

Plaintiff has a past history of drug abuse, with her last use prior to her alleged onset date. (Tr. 65). She stated at the time of that use that she did not care if she lived or died. (Tr. 66). Plaintiff now just takes prescribed medications, including methadone for pain. (*Id*.) She stopped the methadone once during the period of her current disability claim and used a leftover prescribed Percocet pill for an ear infection, thinking it would

7

be more effective than methadone. (*Id.*) It then appeared in her urine drug screen and her doctor cautioned her about it and she resumed her methadone. (Tr. 65-66). Except for this single instance, she has not used any non-prescribed drugs since her alleged onset date.

**B.**

On appeal, Plaintiff alleges that the ALJ erred when she disregarded the work limitations placed upon her by treating therapist Perry McCool.

Mr. McCool placed significant work limits on Plaintiff due to her emotional disorder. (Tr. 505-508). The vocational expert ("VE") agreed that such limitations precluded work. (Tr. 76-78). The VE also opined that Plaintiff would be unable to work if she missed more than one day of work per month. (Tr. 78).

Cognitive therapists are not "acceptable medical sources" and instead fall into the category of "other sources." 20 C.F.R. §§ 404.1513(d), 416.913(d). Information from other sources may be based on special knowledge of the individual and may provide insight into the severity of an individual's impairment and how it affects the individual's ability to function. SSR. 06-03p. It may be appropriate to give more weight to the opinion of a medical source who is *not* an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. SSR 06-03p. Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in a professional capacity include how long the source has known the individual, how

frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Id. See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Not every factor will apply in every case. SSR 06-03p.

Mr. McCool's chart documents a longitudinal record of 24 separate visits for mental health care treatment over the 14 months prior to the ALJ hearing. (Tr. 467-508, 531-560). Mr. McCool and his employer, Centerpoint/Talbert House, are Plaintiff's only treatment sources for her mental health problems. Unfortunately, Plaintiff does not have a treating *physician* for her mental health.

The ALJ broadly asserted that Mr. McCool's work limits "are inconsistent with the treatment notes of record," but fails to offer any examples to substantiate this claim. (Tr. 30). Instead, the ALJ relies on Dr. Sexton, a one-time evaluating physician. Dr. Sexton evaluated Plaintiff in December 2011, over 16 months before the April 12, 2013 hearing. (Tr. 401-408, 441). Even the ALJ acknowledges that many of Plaintiff's more serious symptoms emerged *after* Dr. Sexton's report was issued.[3] For example, Plaintiff began seeing shadows and hearing things in February 2012, after Dr. Sexton's evaluation. (Tr. 29, 401-408). While Plaintiff was diagnosed with psychosis by the treating agency, her psychotic symptoms emerged after seeing Dr. Sexton. (Tr. 29). Accordingly,

---

[3] Still, Dr. Sexton did diagnose Plaintiff with major depression and anxiety. (Tr. 401-408).

considering the SSR 06-03p factors, the ALJ should have given Plaintiff's treating therapist more weight than a non-treating examiner.

The Commissioner alleges that the ALJ was justified in relying on the state agency doctors' opinions even though they were offered more than one year before the hearing and before Plaintiff's more serious symptoms of psychosis developed.  However, the state agency doctors failed to review the complete record, so they cannot be offered controlling weight.  Moreover, pursuant to SSR 06-03p, it is appropriate to give more weight to Mr. McCool given the longitudinal treatment relationship.  Accordingly, the ALJ erred when she disregarded Mr. McCool's work limitations.

## C.

Next, Plaintiff maintains that the ALJ's rationale for disagreeing with the work limits described by the treating therapist are contradicted by her own factual findings.

The treatment records demonstrate that: Plaintiff was placing large objects in front of her door at home because she believed "someone was coming to get her", she carried sharp knives around both inside and outside the apartment, she tearfully expressed a desire not to live, she reported hallucinations, she did not want to be around people, she avoided going out, she slept poorly, she had feelings of guilt and worthlessness, she had thoughts of suicide, she experienced recurrent severe panic attacks, and she reported "seeing things out of [the] corner of her eye."  (Tr. 29-30).  These records support Mr. McCool's opinions as to his patient's limitations.

The Commissioner fails to cite a single example where Mr. McCool's notes are inconsistent with the work limits he placed on her.

### D.

Next, Plaintiff claims that the ALJ's finding that she is not credible is not supported by the record.

The ALJ's findings as to credibility are entitled to deference because she has the opportunity to observe the claimant and assess her subjective complaints. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). A court may not disturb the ALJ's credibility determination absent compelling reason. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Id*. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Rather, such determination must find support in the record. *Id.*

First, the Commissioner argues that by failing to seek medical care for lupus, Plaintiff showed an indifference to medical treatment. However, Plaintiff was never diagnosed with lupus. As Plaintiff explained at the hearing, she was treated for a rash

11

that the doctor thought *might* be lupus, but it was not.  (Tr. 67-68, 356-358).  Therefore, it would be irrational for Plaintiff to seek medical care for a non-existent problem.

The ALJ also questions the credibility of Plaintiff's alleged hallucinations.  However, the treating mental health agency took these symptoms, including her hallucinations, seriously and continuously treated them.  (Tr. 467-508, 531-560).  Further, the ALJ found that once Plaintiff was placed on medication, her hallucinations subsided and she had more emotional/psychological balance.  (Tr. 32).  Therefore, the ALJ's own findings acknowledge that Plaintiff's doctors took her psychotic symptoms seriously and that the medications they prescribed helped.

The ALJ also cites the fact that Plaintiff had a history of drug abuse and criminal problems related to that drug abuse.[4]  (Tr. 28, 29, 31, 32).  However, the ALJ did not find that Plaintiff's past drug use continued, nor did she find that her drug abuse history was a "material factor" regarding her current disability, which the regulations provide can be a basis for denial.  20 C.F.R. § 404.1535.  There is no evidence in Plaintiff's treatment records that she has an ongoing problem with drug abuse.  The ALJ's highlighting of that past history offers no basis to deny her current claim.  The ALJ does note a single instance within the previous 12 months where Plaintiff's doctor found that she had improperly used a leftover prescribed pain pill when she had a toothache.  (Tr. 32).  The doctor explained to Plaintiff that the use of "old meds is not acceptable" and she did not do it again.  (Tr. 65-67).

---

[4] Plaintiff's criminal arrests occurred in 1998, except for a theft in 2009 where she was charged with stealing and eating a candy bar in a store for which she paid a fine. (Tr. 457).

12

Accordingly, the ALJ's reasons for rejecting Plaintiff's credibility are improper.

### E.

Finally, Plaintiff maintains that the ALJ erroneously referenced her ability to do minor, life-sustaining activities as proof that she can do full-time work.

Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as she alleged. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(2)(i). *See also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (an ALJ may "consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments").

The ALJ notes that Plaintiff occasionally drives a car, eats food, dusts, performs household duties, shops, watches movies, talks with her husband, and communicates with a single sister by phone. (Tr. 24).[5] The ALJ concludes that these activities support a finding that Plaintiff only has "moderate limitations." (*Id.*) However, there is a significant difference between doing minimal self-sustaining household chores and performing work 40 hours a week for 52 weeks per year. Plaintiff's ability to perform some activities on a limited basis is not substantial evidence that her symptoms are not

---

[5] Plaintiff's hearing testimony clarifies the extent to which she performs household duties: "I'll smoke a cigarette, and then I basically don't do anything. I go into the kitchen, I'll make something to drink, you know, like a cup of coffee, and then I'll try to get myself motivated, and I'll make him [her husband] a pop sometimes and then I sit and stare at the TV a lot, most of the day. And, then sometimes I'll do a few dishes. Some days I take a shower, some days I don't, but it takes me a little bit, you know. And then in the evening I start feeling a little better when it gets darker, and then I'll fix us something to eat like a sandwich, or something that you can heat up. And, let's see, basically that's about it. We'll eat dinner. We eat about like one meal a day, sometimes two, you know, a snack. And, then I go to bed about 10:00, and it starts over again." (Tr. 53-54). With respect to the ALJ's statement that Plaintiff "shops," she goes to Kroger once a month for about 20 minutes. (Tr. 50). She shops in the evening when there are not as many people out. (Tr. 62).

disabling. *See, e.g., Rogers,* 486 F.3d at 248-49 (the minimal daily functions of driving, cleaning an apartment, caring for pets, laundry, reading, exercising and watching the news are not comparable to typical work activities). *See also* 20 C.F.R. § 404.1572(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.").

Accordingly, Plaintiff's household duties clearly do not support a finding that she can perform substantial gainful activity.

## III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of

cumulative evidence, or where the proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985).  Such is the case here.

Here proof of disability is overwhelming and remand will serve no purpose other than delay.  As fully recited here, in view of the medical record and the credible and controlling findings of therapist McCool, the ALJ failed to meet the burden of finding substantial evidence that Plaintiff is able to engage in substantial gainful activity.  Instead, proof of disability is overwhelming.

## IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner, that Beth Lorman was not entitled to supplemental security income and disability insurance benefits, is hereby found to be **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and it is **REVERSED**; and this matter is **REMANDED** to the Commissioner for an immediate award of benefits beginning December 1, 2010.

The Clerk shall enter judgment accordingly, whereupon this case shall be **CLOSED** in this Court.

Date:  5/8/15                                              *s/ Timothy S. Black*
                                                                      Timothy S. Black
                                                                      United States District Judge